**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

| | |
|---|---|
| CHASITY D. ADKINS, *et al.*, on behalf of herself and all others similarly situated, | : <br> : CASE NO. 5:22-cv-00006-JPB <br> : <br> : |
| Plaintiffs, | : |
| v. | : JUDGE JOHN P. BAILEY |
| | : |
| MT. NEBO FOODS, LLC d/b/a DEE JAY'S BBQ RIBS & GRILLE, *et al.*, | : <br> : <br> : |
| | : |
| Defendants. | : |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff, Chasity Adkins, individually and on behalf of all current Opt-In Plaintiffs and Settlement Collective Members (collectively, "Plaintiffs"), and Defendants Dewey J. Guida Enterprises, Inc., Defendant Dewey J. Guida, Defendant Mt. Nebo Foods, LLC, Defendant Michael McMullen, and Defendant James A. Irvine (collectively, "Defendants") (together, the "Parties") hereby respectfully move this Court to review the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached hereto as Exhibit 1 ("Ex. 1"), and for an order approving the Settlement Agreement as fair and reasonable. In support of this Motion, the Parties state as follows:

1. Plaintiffs commenced this action against Defendants, alleging in part that Defendants unlawfully retained tips earned by Plaintiffs under the Fair Labor Standards Act ("FLSA") and state-law equivalent statutes.

2. Defendants have denied liability and wrongdoing of any kind.

3. In an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties have reached a settlement of all claims asserted in the pending action. The terms of the

settlement are embodied in the Settlement Agreement. *See* **Ex. 1**.

4. Plaintiffs' and Defendants' undersigned counsel believe that the proposed Settlement Agreement is fair and reasonable.

5. The proposed Settlement Agreement is contingent upon the Court's review and approval of it, as well as the Court's issuance of an Order approving the Settlement Agreement as fair and reasonable.

6. The Parties agree that *bona fide* disputes exist regarding Plaintiffs' wage-and-hour claims.

7. The Parties stipulate and agree that the proposed Settlement Agreement: (a) is not the product of fraud or collusion; (b) is in resolution of complex and expensive litigation that is likely to be of a significant duration; (c) accounts for the likelihood of success on the merits by Plaintiffs, as well as the defenses of the Defendants; (d) is reasonable and fair in the opinion of the Parties' counsel; and (e) is in the public's best interest to promote the early resolution of contested claims in litigation.

8. The Parties, pursuant to Fed. Civ. R. 41(a)(1)(ii) and based upon the attached Settlement Agreement, hereby stipulate to the dismissal of this case with prejudice upon execution of all Settlement Agreement terms. The Parties request that this Court retain jurisdiction to enforce the terms of the proposed Settlement Agreement.

WHEREFORE, for the foregoing reasons, the Parties request that the Court review the proposed Settlement Agreement (*see* **Ex. 1**) and issue an Order (*see* **Exhibit 2** ("**Ex. 2**")) approving it as fair and reasonable, and that this case be stipulated as dismissed with prejudice. The Memorandum in Support of this Motion is incorporated herein.

December 14, 2022

Respectfully submitted,

| | |
|---|---|
| **Chasity D. Adkins, on behalf of herself and all others similarly situated, by Counsel:** | **Dewey J. Guida Enterprises, Inc. and Dewey J. Guida, by Counsel:** |

/s/*Adam L. Slone*
Adam L. Slone (WVSB #12903)
**BRIAN G. MILLER CO., L.P.A.**
250 W. Old Wilson Bridge Rd., Suite 270
Worthington, Ohio 43085
Tel:   (614) 221-4035
als@bgmillerlaw.com

/s/*Robert E. DeRose*
Robert E. DeRose (*pro hac vice*)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Tel:   (614) 221-4221
Fax:   (614) 744-2300
bderose@barkanmeizlish.com

*/s/Ryan Q. Ashworth*
Ryan Q. Ashworth, I (WVSB #10451)
**ASHWORTH LEGAL, LLC**
314 Ninth Street, Suite 100B
Huntington, West Virginia 25701
Tel:   (304) 634-8523
ryan@ashworth-legal.com

*/s/Eric E. Kinder*
Eric E. Kinder (WVSB #8817)
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East
Charleston, West Virginia 25301
Tel:   (304) 340-3800
Fax:   (304) 340-3801
ekinder@spilmanlaw.com

*/s/Daniel Guida*
Daniel Guida (WVSB #4604)
Guida Law Offices
3374 Main Street
Weirton, West Virginia 26062
Tel:   (304) 748-1213
Fax:   (304) 748-1225
guidalaw@comcast.net

**Mt. Nebo Foods, LLC, Michael McMullen, and James A. Irvine, by Counsel:**

*/s/Julie A. Moore*
Julie A. Moore (WVSB #11315)
J. Tyler Mayhew (WVSB #11469)
Bowles Rice LLP
125 Granville Square, Suite 400
Morgantown, West Virginia 26505
Tel:   (304) 285-2524
Fax:   (304) 285-2575
jamoore@bowlesrice.com
tmayhew@bowlesrice.com

**MEMORANDUM IN SUPPORT OF THE JOINT
MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiff, Chasity Adkins, individually and on behalf of all current Opt-In Plaintiffs and Settlement Collective Members (collectively, "Plaintiffs"), and Defendants Dewey J. Guida Enterprises, Inc., Defendant Dewey J. Guida, Defendant Mt. Nebo Foods, LLC, Defendant Michael McMullen, and Defendant James A. Irvine (collectively, "Defendants") (together, the "Parties") have agreed to settle the above-entitled action taking into account the disputed issues of fact and law, pursuant to the terms set forth in the Joint Stipulation of Settlement and Release, attached as Exhibit 1 to the Joint Motion for Approval of FLSA Settlement and Dismissal with Prejudice (the "Motion"). As such, the Plaintiff, by and through her undersigned attorneys, move this Court for an Order granting their Motion as a reasonable compromise of a *bona fide* dispute over Plaintiffs' claims for unpaid wages. The Parties agree that, upon Court approval of the Motion, this lawsuit will be dismissed with prejudice.

**I.      LEGAL CLAIMS AND PROCEDURAL HISTORY**

Plaintiff instituted this action in the United States District Court for the Northern District of West Virginia on January 7, 2022, raising claims against Defendants for unpaid wages. *See generally Compl*. ECF No. 1. Count I of Plaintiff's Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), while Count II raised Rule 23 Class Action Violations of the West Virginia Minimum Wage and Maximum Hours Laws, W. Va. Code 21-5C-1, et seq., the West Virginia Wage Payment and Collection Act, W. Va. C.S.R. 42-5-1, and W.Va. Code 21-3-10A ("West Virginia Wage Acts"). Specifically, Plaintiff alleged that Defendants required Plaintiff and putative class members to participate in an unlawful tip pool that included managers, as well as employees who were not customarily nor regularly tipped employees. *Id*. at ¶ 11, 42-52. Thereafter, Plaintiff amended her

complaint on March 4, 2022, including additional Defendants. *See* ECF. No. 22.

On April 1, 2022, Defendants Dewey J. Guida Enterprises, Inc. and Dewey J. Guida ("Guida Defendants") filed their answer. *See generally* ECF. No. 28. Defendants Guida asserted numerous defenses, including, but not limited to stating it acted in good faith and had reasonable belief that it was complying with the FLSA and acted in reliance with guidance from the Department of Labor and that plaintiff was not entitled to attorney's fees nor liquidated damages.

Similarly, Defendants Mt. Nebo Foods, LLC, James A. Irvine, and Michael McMullen ("Mt. Nebo Defendants") filed their answer on May 3, 2022. *See generally* ECF. No. 32. Defendants have each asserted various defenses and both Defendants wholly denied the claims made by Plaintiff. Defendants Mt. Nebo asserted multiple affirmative defenses, including, but not limited to the defense that the violations occurred prior to purchasing Dee Jays, that they are entitled to indemnification from co-defendants, and that they acted in good faith and in conformity with and reliance on any written administrative regulations, order, ruling, approval, interpretation, or other guidance provided by the Administrator of the United States Department of Labor, Wage and Hour Division. *Id*.

On May 5, 2022, Plaintiffs filed its *Named Plaintiff's Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. 216(b)*. See generally ECF No. 34. Thereafter, Defendants stipulated to the conditional certification of the class. See generally ECF No. 37. The Court then granted Plaintiff's motion for conditional certification of the class on July 25, 2022. See generally ECF No. 51. For purposes of conditional certification, the FLSA Collective Action Class ("putative class members") was defined as:

> **All servers who worked for the restaurant doing business as "Dee Jay's BBQ Ribs and Grille" and/or "Dee Jay's BBQ Ribs & Grille" (both referred to as "Dee Jay's") who were and are currently employed at any time from January 7, 2019, through the final disposition of this matter.**

Shortly thereafter, Plaintiff provided notice to all putative class members, which consisted of 72 servers. At the conclusion of the notice period, thirty-six servers had chosen to join as opt-in plaintiffs.

By agreement, the Parties attended mediation on October 24, 2022, with mediator Jon Turak, which ultimately was unsuccessful. The Parties attempted a second mediation with mediator Jon Turak again on November 21, 2022. During the second mediation, the Parties reached an agreement in principle. Following mediation, the Parties drafted and executed the Joint Stipulation of Settlement and Release, attached as **Ex. 1**. On December 2, 2022, the Court entered an order directing the Parties to file the approval motion and a proposed order by December 15, 2022. *See*, ECF No. 62.

## II. TERMS OF THE PROPOSED JOINT STIPULATION OF SETTLEMENT AND RELEASE

The terms of the proposed Settlement Agreement are memorialized in **Ex. 1**. However, for purposes of this Memorandum, the Parties offer the following summation of the Settlement Agreement, in part:

### A. THE GROSS SETTLEMENT AMOUNT

The Parties have agreed to resolve this matter for the Gross Settlement Amount for Six Hundred Sixty-Five Thousand Dollars ($665,000.00). *See* **Ex. 1** at ¶ III.1. The Gross Settlement Amount fully resolves and settles the Lawsuit, including the claim for attorneys' fees and costs, and any and all amounts to be paid to or on behalf of the Plaintiffs. *See* **Ex. 1** at ¶ III.5.i.

The Joint Stipulation of Settlement and Release provides for payment of attorneys' fees and expenses in the amount of up to $233,577.48[1]. *See* **Ex. 1** at ¶ III.2.b. If the Court approves the

---

[1] At the time of settlement, additional anticipated future costs were included. Since that time, counsel has finalized their litigation expenses, which are $7,925.53. When combined with the attorney fees of 33.33%, or $221,666.67, the total attorney fees and costs amount to $229,592.20. The difference, between the total attorney fees and costs ($229,592.20), and the amount provided in the Joint Stipulation of Settlement and Release ($233,577.48), will revert to be distributed

requested Service Awards, attorneys' fees and expenses, and the net settlement fund will total an estimated amount of $411,422.52 ("Net Settlement Amount").

The Net Settlement Amount will be allocated to Plaintiff and the Opt-In Plaintiffs ("Settlement Collective Members"). The Defendants provided Plaintiffs' Counsel the daily payroll, hours, tips earned and gross sales for each individual Settlement Collective Member from January 7, 2019 thru October 2, 2022. *See Declaration of Robert E. DeRose* attached as **Ex. 3 at ¶11.** Using this information, Plaintiffs' Counsel was able to calculate each individual Settlement Collective Members' unpaid Tip Credit Wages[2] and the Tip Out[3] each paid to the Defendants' Tip Pool. During Plaintiffs' Counsel's calculation and extensive interviews with Settlement Collective Members, and the significant help of Ms. Adkins and Ms. Kuzma; it was learned that Defendants changed their practices and came into compliance as of January 24, 2022. *See*, **Ex 3 at ¶12.** Accordingly, the Settlement Period was determined to be January 7, 2019 thru January 24, 2022, and the Parties have agreed that the current tip pool policies and practices in effect at Dee Jay's are valid and fully compliant with the FLSA. *See*, **Ex 3 at ¶13.**

Each Settlement Collective Member's Settlement Share consists of roughly 36% of their Unpaid Wages[4] after attorney fees, costs and service awards are deducted. *See* **Ex. 1** at ¶ III.3.a.i. *See also*, **Ex 3 at ¶15.** The Settlement Collective Members' Settlement Share will be split equally between unpaid wages and liquidated damages with Defendants paying their share of the employer

---

to plaintiffs as a part of the "Net Settlement Fund" (*see* **Ex. 1 at III.2.d**, which states "if any portion of Collective Counsel Payment, or the Service Awards, are not approved by the Court, the amount of the reduction will be added to the Net Settlement Fund and will not revert to Defendants.").

[2] Tip Credit Wages are the amount of tips each Plaintiff and Opt-in Plaintiff earned that the Defendants used to make up the difference between the $2.62 per hour they were paid and the West Virginia minimum wage of $8.75.

[3] Defendants required each Plaintiff and Opt-in Plaintiff to contribute daily to the Tip Pool 1.5% of their gross sales during a day shift and 3% of their gross sales during an evening or weekend shift.

[4] Unpaid Wages are the total of the unpaid Tip Credit Wages and the Tip Out.

withholdings from monies within the Settlement Amount. *See* **Ex. 1 at ¶** III.3.a.ii. *See also*, **Ex 3 at ¶15.**

### B. DISSEMINATION OF SETTLEMENT PROCEEDS

Within fourteen (14) days of the Effective Date[5], Defendants shall issue payment and delivery of the Collective Counsel Payment, payment and delivery of the Service Payments, and payment and delivery of the Collective Settlement Share Payments. *See* **Ex. 1** at ¶ III.3.b.

### C. RELEASES

Each Settlement Collective Member agrees to release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based upon the facts and claims asserted in the operative Complaint in this action, including under the Fair Labor Standards Act ("FLSA"), the West Virginia Minimum Wage and Maximum Hours Law; W. Va. Code §§ 21-5c-1, et seq.; and, the West Virginia Payment and Collection Act, W. Va. C.S.R. 42-5-1, et seq., and § 21-3-10A., under the theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits against the Defendants and Released Parties. *See* **Ex. 1** at ¶ III.5. In addition, Collective Counsel agrees to waive all claims to costs and attorneys' fees and Collective Representative Service Award Recipients agree to submit a waiver and general release. *See* **Ex. 1** at ¶ III.5.ii-iii.

---

[5] "Effective Date" means the date by which the following terms are met: (i) Defendants' Counsel are in physical receipt of a fully executed copy of this Agreement, and a completed and signed IRS Form W-9 from Collective Counsel, Barkan Meizlish DeRose Cox, LLP; (ii) Plaintiffs have filed with the Court the Joint Motion for Approval of Collective Settlement in accordance with the terms of the Agreement, seeking approval of the Collective Settlement and dismissal of the Collective Action with prejudice, (iii) Collective Counsel delivering to Defendants' Counsel a list of the last known mailing address for each Collective Member, along with a current form W-9 and W-4, from each Collective Member, and (iv) the Court has entered a final order approving the Collective Settlement and dismissing the Collective Action with prejudice.

### D. SERVICE AWARDS

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Archbold v. Wells Fargo Bank,* No. 3:13-cv-24599 2015 U.S. Dist. LEXIS 92855, 2015 WL 4276295, at *6 (S.D.W. VA). Courts around the country have allowed such awards to named plaintiffs or class representatives. *Id*., citing *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 to class representatives out of $50 million fund); *Dijkstra v. Carenbauer*, No. 5:11-cv-00152, 2015 U.S. Dist. LEXIS 193920, 2015 WL 12750449, at *6 (N.D. W.Va. July 12, 2016)(awarding $10,000 to sole class representative); *In re Celebrex (Celecoxib) Antitrust Litig*., No. 2:14-CV-00361, 2018 U.S. Dist. LEXIS 85125, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding $300,000 to class representatives out of $94 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund). One district court has gone so far as to say that these incentive awards are "routinely approve[d]." *Id*., citing *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000). The purpose of such awards is to encourage socially beneficial litigation by compensating those plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *Adkins v. Midland Credit Mgmt*., No. 5:17-cv-04107, 2022 U.S. Dist. LEXIS 19733, at *14-15 (S.D. W. Va. Feb. 3, 2022), citing *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *25; *Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 257 (D.N.J. 2005).

Under the Service Agreement, Named Plaintiff Chasity Adkins and Opt-in Plaintiff Tiffany Kuzma (together, "Collective Representatives") will each receive a service award of $10,000 to be

paid in recognition of their efforts spend in prosecuting this action on behalf of the putative class members. *See* **Ex. 1** at ¶ III.2.a "To determine whether [a service] payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 U.S. Dist. LEXIS 36393, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015); *see also Adkins v. Midland Credit Mgmt.*, No. 5:17-cv-04107, 2022 U.S. Dist. LEXIS 19733, at *16 (S.D. W. Va. Feb. 3, 2022)(awarding Plaintiffs and Class Representatives Stephanie Adkins and Douglas Short a service award of $10,000 in recognition of their service to the class).

The Court should approve Ms. Adkins' and Ms. Kuzma's service award as both individuals faced risk in commencing suit, faced personal difficulties encountered by pursuing litigation, faced concerns about workplace retaliation and negative implications, and benefited the collective members by their participation and lengthy efforts.

Ms. Adkins was the sole named plaintiff in this matter and was responsible for initiating the lawsuit. At the time suit was brought, Ms. Adkins still worked at the Defendants' restaurant. Despite having concerns about negative repercussions of bringing suit, she persevered to represent her fellow servers. *See, Declaration of Adam Slone* attached as **Ex. 4** at ¶ 9. Nonetheless, Ms. Adkins bravely continued to represent the collective group of servers. As named plaintiff, Ms. Adkins also spend significant periods of time being involved with the lawsuit. She reviewed and edited all pleadings prior to filing; she coordinated with difficult witnesses to make them available for attorneys; she ensured that all opted-in Plaintiffs were submitting paperwork and relevant information on a timely basis; and she spent significant periods of time discussing this matter with all opted-in Plaintiffs. As an estimate, Ms. Adkins opines that she received and answered over 1,000 texts messages or calls

related to this matter. *See*, **Ex. 4** at ¶ 10. In addition to above, Ms. Adkins also spent long periods of time meeting with Plaintiffs' Counsel, which consisted of, but was not limited to, missing over 16 hours of work to participate in two mediations. *See*, **Ex. 4** at ¶ 11.

Ms. Kuzma also had a significant role in assisting the collective group of servers obtain a favorable result. Prior to suit being files, and while Ms. Kuzma continued to be employed by Defendants, Ms. Kuzma had a significant role in bringing these allegations alight by participating in prior wage and hour investigations from the Department of Labor over the same alleged tip policy that was subject to dispute. In addition, after suit had been filed, Ms. Kuzma assisted counsel in providing written policies and tip calculation sheets relevant to the claims in this matter and assisted the attorneys obtain information from collective members and coordinated with other class members regarding this matter. Lastly, Ms. Kuzma spent significant time pursuing this matter, despite not being a named plaintiff. Ms. Kuzma participated in pre-suit meetings, post-suit meetings, and meetings to prepare for mediation. Similarly, Ms. Kuzma also missed two days of work to participate in the mediations. *See*, **Ex. 4** at ¶ 14.

**III.     THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT**

Fourth Circuit precedent, as well as the FLSA, requires that this Court approve a private settlement of an overtime or minimum wage claim arising under the FLSA. *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007); *Lynn's Food Stores, Inc. v. United States of America*, 679 F.2d 1350,1353 (11th Cir. 1982); *Howell v. Dolgencorp, Inc.*, 2011 WL 121912, at *1 (N.D. W. Va. Jan. 13, 2011). To approve the settlement proposed by the Parties, this Court must determine that the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir.

1982); *See Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 365 (D. Md. 2016) ("In reviewing FLSA settlements for approval, district courts in [the Fourth Circuit] typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." (internal quotation marks omitted)); *Patel v. Barot,* 15 F. Supp. 3d 648, 654 (E.D. Va. 2014). This undertaking necessitates a three-part inquiry: (1) "whether there are FLSA issues actually in dispute"; (2) whether the settlement is fair and reasonable; and (3) whether the request for attorney's fees, if included in the agreement, is reasonable. *Hackett*, 259 F. Supp. 3d at 365. *See Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010) ("[A]n FLSA settlement should be approved if the settlement 'does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" (*quoting Lynn's Food Stores,* 679 F.2d at 1354)). *See Jarrell v. Charleston Area Med. Ctr,, Inc*., No. 2:17-cv-01371, 2018 U.S. Dist. LEXIS 161576, at *5 (S.D. W. Va. Sep. 20, 2018).

  **A. There is a bona fide dispute over FLSA provisions.**

The existence of a bona fide dispute under the FLSA may be discerned from a review of the Parties' filings, paying particular attention to the Complaint, Answer, and factual and legal assertions contained in the Parties' Joint Motion for Court Approval of Settlement. *See Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 949047, at *3 (D. Md. June 13, 2013) (*citing Lomascolo*, 2009 WL 3094955, at *16–17).

First, the FLSA issues here are actually in dispute. As set forth above, Plaintiffs have claimed that they are entitled to compensation under the FLSA. Defendants have disputed that Plaintiffs are entitled to any relief and deny the applicability of the FLSA in this case. Additionally, taken together, Defendants assert over 20 affirmative defenses in their respective Answers. *See* Doc 28, PageID #143-44; Doc 31, PageID #168-69.

In particular, and subsequent to its filings, Defendants have argued that the alleged managers,

who were at issue for participating in the tip pool, did not qualify as managers, but instead shift leaders or server assistants, who were permitted to participate in the tip pool. In support of its arguments, it asserted that the alleged disputed managers did not possess authority to hire and fire, did not have authority to determine rates of pay, nor create any workplace policies.

On the contrary, Plaintiffs have argued that the managers did, in fact, have authority to discipline, had authority to make operational decisions, oversaw and directed the work of the servers, and were in charge of scheduling. Furthermore, Plaintiffs argued that the alleged managers only assisted the servers on a limited, nominal basis. In support thereof, several declarations were obtained with corroborating testimony.

The Guida Defendants have also argued that they acted in good faith and without any willfulness because they acted in accordance and in compliance with prior guidance of the Department of Labor, Wage and Hour Division. Particularly, Defendants Guida indicated they relied upon prior workplace investigations of the Department of Labor and final findings wherein the Department approved the tip pool policies at issue as following the law. Plaintiffs dispute the legitimacy of the investigation and the compliance with the past rulings.

Similarly, the Mt. Nebo Defendants also relied upon similar defenses and indicated that it relied upon representations from the Guida Defendants Guida that its pay practices had been approved by the Department of Labor. It further argued that any alleged violations ceased after 90-days once the disputed tip pool policies were changed to remove the alleged managers.

The Parties clearly have a bona fide dispute over the applicability of the FLSA to this matter, and whether Plaintiffs are entitled to any relief. Given the adversarial nature of a lawsuit brought under section 216(b), "when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory

rights brought about by an employer's overreaching." *Lynns Food Stores*, 679 F.2d at 1354. The settlement set forth herein was achieved after extensive negotiations between the Parties.

### B. The fairness and reasonableness factors are satisfied.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). There also is a strong presumption "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id*. In evaluating the fairness and reasonableness of FLSA settlements, courts consider:

> (1) The extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery.

*Patel V. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014); *see also Flinn v. FMC Carp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Here, each of these factors suggests that the Parties' settlement agreement is fair and reasonable.

In this matter, unlike other matters, the Parties collectively agreed to conditional certification of the class for purposes of determining the scope of damages and the scope of the collective class so that the Parties could mediate and take efforts to seek resolution prior to incurring additional expense and litigation costs. As a part of those efforts, the Parties exchanged initial disclosures and agreed to engage in discovery, which consisted of, but was not limited to, the wage records and tip out information for each Plaintiff for the last three years, business policies and employment

handbooks for relevant time periods, and other relevant discovery. Should this case have continued, this class action suit would include high uncertainties of outcome, difficulties of proof, lengthy litigation, and extensive resources extended by all Parties. The Parties agree that it is in their respective client's best interests to resolve the alleged claims given the potential expense, inconvenience, exposure to liability and damages, and delay of continued litigation.

There is no fraud or collusion in the settlement as all Parties have been represented by experienced labor and employment counsel who have competently represented their clients, and the settlement is the result of arm's-length negotiations considering the strengths and weaknesses of each sides' positions. Additionally, the settlement was mediated before an experienced and well-respected trial attorney, Jonathan E. Turak, Esq. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 U.S. Dist. LEXIS 8234, 2002 WL 970396, at *1 (E.D. Pa. 2002). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad v. Nat'l City Mortg.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, 2008 WL 5377783, at *4 (SD.W. VA. Dec. 19, 2008).

As referenced above, the Parties recognize that there are substantial legal and factual issues that could make it uncertain as to whether Plaintiffs would ultimately prevail should this matter proceed through the litigation process. Defendants deny violating the FLSA as well as any liability thereunder. Therefore, the Parties agree that based on the probability of success on the merits, measured against the risk and costs of continued litigation, the settlement amount is fair and reasonable under the circumstances.

### C. The attorney's fees requested are reasonable.

As a part of the settlement, Plaintiffs' counsel asks the court to approve an attorney fees award of 1/3 of the settlement fund and litigation expenses, which amounts to $229,652.20[6]. *See* Ex. 1 at ¶ III.2.b.

Plaintiffs assert that an attorneys' fee award of 1/3 of the total settlement fund plus litigation expenses is generally appropriate in a wage and hour case. The Fourth Circuit has held that fee awards to counsel further the remedial goals of the Fair Labor Standards Act by enabling plaintiffs to obtain the assistance of competent counsel. *See Brandon v. Guildford Cty. Bd. of Elec.*, 921 F.3d 194, 199-200 (4th Cir. 2019). Under the FLSA, "the Court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by defendant, and costs of the action." 29 U.S.C. 216(b). However, the FSLA requires judicial review of the reasonableness of the attorneys' fees and expenses "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Faubel v. Grogg's Heating & Air Conditioning, Inc*. Civil Action No. 2:17-cv-02410, 2018 U.S. Dist. LEXIS 86766, at *7-8 (S.D. W.Va. May 22, 2018) (citations omitted).

Plaintiffs further assert that Plaintiffs Counsel's fees are reasonable under a lodestar basis. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The lodestar is the product of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). In determining reasonable attorneys' fees in FLSA actions, courts within the Fourth Circuit begin with

---

[6] As indicated in footnote 1, Ex. 1 allows for plaintiff's counsel to request up to $233,577.49 to be approved. However, after finalizing litigation expenses, the total of expenses and attorney fees amount to $229,592.20.

the lodestar approach." *Newbanks*, 2015 U.S. Dist. LEXIS 191550, 2015 WL 12843673 at *8; See also Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992). In deciding what constitutes a reasonable rate and number of hours expended, this Circuit considers the so-called *Johnson* factors:

> 1) The time and labor expended; 2) the novelty and difficulty of the questions raised; 3) the skill required to properly perform the legal services rendered; 4) the attorney's opportunity costs in pressing the instant litigation; 5) the customary fee for like work; 6) the attorney's expectations at the outset of the litigation; 7) the time limitations imposed by the client or circumstances; 8) the amount in controversy and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case within the legal community in which the suit arose; 11) the nature and length of the professional relationship between attorney and client; and 12) attorney's fees awards in similar cases.

*Randolph v. Powercomm Constr., Inc*., 715 Fed. Appx. 227, 230 & n.2 (4th Cir. 2017) (citing *Johnson v. Ga. Hwy. Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

Plaintiffs assert that their counsel collectively spent 805.4 hours litigating this case, which required significant expertise to navigate the novel and difficult concepts of law at issue. *See,* **Ex. 3 at ¶6 and Ex. 4 at ¶15, 19.** Plaintiff's Counsel incurred collectively $196,587.50 in attorney fees and $7,925.53 in expenses. *See,* **Ex. 3 at ¶¶6-7 and Ex. 4 at ¶¶15-16, 19-20.** Additionally, Plaintiffs' Counsel anticipates that it will incur an additional $27,905.00 hours of work after the motion is filed**.** *See,* **Ex. 3 at ¶16 and Ex. 3 at ¶22.** Plaintiff's counsel hourly rates have been approved in numerous cases in District Courts around the country.

Plaintiffs assert that they have received a favorable outcome which was only obtained after close to a year of hard-fought litigation, and they attribute these results, in part, to the efforts of their

highly experienced counsel. *See*, **Ex. 3 at ¶¶10-12.** As discussed above, Defendants deny the allegations, and the outcome at trial may have yielded a lesser result for the class absent settlement. Furthermore, Plaintiffs assert that an award of attorney's fees in the amount of 1/3 of the total settlement fund has been recognized as reasonable within this Circuit multiple times. *Kirby v. Caudill Ventures, LLC*, Case No. 7:19-cv-00170-D (D.S.C. Aug. 28, 2020) (ECF Doc. #24) (approving attorney's fees against pizza delivery company alleging minimum wage violations resulting from under-reimbursement vehicle costs); *Prince v. Perfect Delivery, Inc.*, Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62, at 10–11) (same); *Hackett, et al., v. ADF Rest. Invs.*, 259 F.Supp.3d 360, 368–369 (D. Md. 2016) (awarding $232,000 or 1/3 of settlement fund as attorney's fees). Defendants do not challenge the reasonableness of the requested amounts for attorney's fees and expenses. It is also noteworthy that no class member has objected to the fees and expenses sought by counsel.

## III.  CONCLUSION

The Parties believe that the terms and conditions of the Settlement Agreement are fair, reasonable, adequate, beneficial, and in the best interests of all Parties. As noted above, the proposed Settlement Agreement was reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Defendants and the possibility that Defendants may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for all hours worked, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possibly appeal.

For these reasons, the Parties respectfully request that this Court (1) approve the Parties' settlement, including all of the terms set forth in the Settlement Agreement and Release. The Parties have attached a Proposed Order for the Court's review and consideration.

December 14, 2022.  Respectfully submitted,

| **Chasity D. Adkins, on behalf of herself and all others similarly situated, by Counsel:** | **Dewey J. Guida Enterprises, Inc. and Dewey J. Guida, by Counsel:** |
|---|---|

/s/Adam L. Slone_____
Adam L. Slone (WVSB #12903)
**BRIAN G. MILLER CO., L.P.A.**
250 W. Old Wilson Bridge Rd., Suite 270
Worthington, Ohio 43085
Tel: (614) 221-4035
als@bgmillerlaw.com

/s/Robert E. DeRose_____
Robert E. DeRose (*pro hac vice*)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Tel: (614) 221-4221
Fax: (614) 744-2300
bderose@barkanmeizlish.com

/s/Ryan Q. Ashworth_____
Ryan Q. Ashworth, I (WVSB #10451)
**ASHWORTH LEGAL, LLC**
314 Ninth Street, Suite 100B
Huntington, West Virginia 25701
Tel: (304) 634-8523
ryan@ashworth-legal.com

/s/Eric E. Kinder_____
Eric E. Kinder (WVSB #8817)
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East
Charleston, West Virginia 25301
Tel: (304) 340-3800
Fax: (304) 340-3801
ekinder@spilmanlaw.com

/s/ Daniel Guida_____
Daniel Guida (WVSB #4604)
**GUIDA LAW OFFICES**
3374 Main Street
Weirton, West Virginia 26062
Tel: (304) 748-1213
Fax: (304) 748-1225
guidalaw@comcast.net

**Mt. Nebo Foods, LLC, Michael McMullen, and James A. Irvine, by Counsel:**

/s/Julie A. Moore_____
Julie A. Moore (WVSB #11315)
J. Tyler Mayhew (WVSB #11469)
**BOWLES RICE LLP**
125 Granville Square, Suite 400
Morgantown, West Virginia 26505
Tel: (304) 285-2524
Fax: (304) 285-2575
jamoore@bowlesrice.com
tmayhew@bowlesrice.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING DIVISION

**CHASITY D. ADKINS, et al.,**

    *Plaintiffs*,

  v.                                                     **Case No. 5-22-cv-00006-JPB**
                                                        **Judge John P. Bailey**

**MT. NEBO FOODS, LLC, et al.**

    *Defendants*.

## CERTIFICATE OF SERVICE

I certify that I served this ***Joint Motion for Approval of Settlement*** upon the below-named individuals on the date indicated via CM/ECF:

Adam L. Slone, Esq.
**BRIAN G. MILLER CO., L.P.A.**
250 W. Old Wilson Bridge Road, Suite 270
Worthington, OH 43085
als@bgmillerlaw.com

Robert E. DeRose, Esq.
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
bderose@barkanmeizlish.com

Ryan Q. Ashworth, Esq.
**ASHWORTH LEGAL, LLC**
314 Ninth Street, Suite 100B
Huntington, WV 25701
ryan@ashworth-legal.com

Daniel J. Guida, Esq.
**GUIDA LAW OFFICES**
3374 Main Street
Weirton, WV 26062
guidalaw@comcast.net

Eric E. Kinder, Esq.
**SPILMAN THOMAS & BATTLE PLLC**
300 Kanawha Blvd. E.
P.O. Box 273
Charleston, WV 25321-0273
ekinder@spilmanlaw.com

Julie A. Moore, Esq.
J. Tyler Mayhew, Esq.
**BOWLES RICE LLP**
125 Granville Square, Suite 400
Morgantown, West Virginia 26505
jamoore@bowlesrice.com
tmayhew@bowlesrice.com

Dated: December 14, 2022.        /s/ *Adam L. Slone* _____
                                           Adam L. Slone (WVSB #12903)